IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| MYRON KELLEY, #300218, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 3:09-3133-HMH-JRM |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| WARDEN MICHAEL MCCALL, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner, Myron Kelley ("Kelley"), is an inmate at the South Carolina Department of Corrections serving a sentence of thirty years imprisonment for voluntary manslaughter and five years (concurrent) for grand larceny. He filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 3, 2009. Pretrial matters were automatically referred to the undersigned pursuant to Local Rule 73.02(b)(2)(c) and (e), (D.S.C.). Respondent filed a return and motion for summary judgment on February 8, 2010. Because Kelley is proceeding *pro se*, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on February 16, 2010 advising him of his responsibility to respond to the motion for summary judgment. Kelley filed a response to Respondent's motion on March 19, 2010.

1

**Background and Procedural History**

Kelley, and his cousins Tyrone Kelley and Marcus Kelley, killed Angelo Timmons on September 7, 2002, threw his body in a river, and stole his automobile. Kelley was arrested several days later and charged with murder and grand larceny. On the day of jury selection (March 1, 2004) in the Court of General Sessions for Richland County, Kelley entered a negotiated plea to reduced charges and was sentenced. He was represented by Mark Whitlark, Esquire, and Paul Ballou, Esquire. No direct appeal was filed.

Kelley filed an application for post-conviction relief ("PCR") on February 25, 2005. ("PCR I"). An evidentiary hearing was held on March 18, 2008. Both Kelley and Mr. Whitlark testified. Kelley was represented by Cynthia Nelson, Esquire. The PCR court dismissed the application on May 6, 2008, but granted Kelley a belated direct appeal pursuant to White v. State, 263 S.C. 110, 108 S.E.2d 35 (1974).

The record shows that Kelley wrote PCR counsel, Ms. Nelson, asking that she file a motion to alter or amend the order of the PCR court pursuant to Rule 59(e), SCRCP. Apparently Ms. Nelson disagreed[1] and she filed a notice of intent to appeal dated June 6, 2008. This prompted Kelley to file Rule 59(e) motions in the Court of Common Pleas and the South Carolina Supreme Court raising two issues not addressed by the PCR court: (1) trial counsel was ineffective for not raising a Fourth Amendment challenge because he was arrested inside his house without an arrest warrant; and (2) trial counsel was ineffective for not moving to dismiss the indictment because the case was not disposed of within 180 days as required by state procedure. There is no indication in the record that the PCR court acted on Kelley's *pro se* motion. However, the South Carolina Supreme Court wrote

---

[1] *See* letter of Ms. Nelson to Kelley dated May 7, 2008.

Kelley on June 24, 2008, advising in response to a letter of Kelley, that it would take no action based on South Carolina's policy forbidding hybrid representation.

A petition for writ of certiorari was filed by the South Carolina Office of Appellate Defense raising the following issues:

> I. Did the PCR judge err in concluding that Kelley received effective assistance of counsel when it does not appear from the record that Kelley understood he was entering a negotiated plea, and the trial court judge never informed him of the consequences of a negotiated plea?
>
> II. Did the PCR judge correctly find that Kelley did not knowingly and intelligently waive his right to appellate review?

Respondent made a motion to strike certain portions of the brief filed on Kelley's behalf. The Supreme Court denied Kelley's petition with respect to Question II, granted his petition with respect to Question I, and affirmed the conviction finding that Kelley's guilty plea was knowing and voluntary. *See* Kelley v. State, Mem.Op.No. 2008-MO-047 (filed November 24, 2008). The Remittitur was returned on December 10, 2008.

On December 17, 2008, Kelley filed a second PCR ("PCR II"). The PCR court issued a conditional order of dismissal on June 19, 2009. Kelley filed a response dated June 22, 2009. A final order of dismissal was issued on July 27, 2009 confirming that PCR II was successive and untimely based on South Carolina statutory requirements. Kelley filed a "Supplemental 59(e) Motion" dated September 8, 2009. The motion was denied on October 21, 2009.

On December 10, 2009, Kelley filed an "Explanation" pursuant to Rule 243(c), SCACR. Kelley also filed a petition for writ of certiorari in the South Carolina Supreme Court. The South Carolina Supreme Court dismissed Kelley's appeal on December 14, 2009 finding that Kelley had failed to show an arguable basis that the PCR court's order of dismissal was improper. Kelley's

petition for reinstatement was denied. The Remittitur was returned on January 21, 2010.

## Grounds for Relief

In his present petition, Kelley asserts that he is entitled to a writ of habeas corpus on the following grounds:

**Ground One:** Sixth Amendment Violation

**Ground Two:** 14th Amendment Violation

**Ground Three:** Fourth Amendment Violation

**Ground Four:** Subject Matter Jurisdiction

## Motions

**1. Motion for Abeyance**

On December 23, 2009, Kelley filed a "Motion for Abeyance" asking that his case be stayed because he "is in the process of filing a PCR claiming procedural ineffective assistance of PCR counsel, statutory and constitutional jurisdiction and due process violation." Respondent filed an opposition memorandum.

In Rhines v. Walker, 544 U.S. 269, 278 (2005), the Supreme Court held that district courts had the discretion to stay a habeas proceeding in limited circumstances, and for good cause shown to allow a petitioner to exhaust claims asserted in a "mixed petition." The court recognized that dismissal of the petition to allow complete exhaustion may result in a violation fo the one year statute of limitations imposed by 28 U.S.C. § 2244(d) upon refiling. Kelley has not shown good cause. His motion is based on his intent to file another PCR with claims undefined by his motion. As discussed below, Kelley has already filed two PCR's and the South Carolina courts found his second to be untimely and successive under South Carolina procedure. There is nothing in the record before this

court to suggest that the South Carolina courts would look more favorably upon a third PCR.

**2. Discovery**

On February 10, 2010, Kelley filed a "Notice of Motion and Motion for Leave of Court to Invoke the Discovery Process." Respondent filed an opposition memorandum.

By this motion Kelley seeks to use Habeas Rule 6 to require Respondent to aid him in his efforts to perform legal research. Habeas Rule 6 is designed to expand the record in limited circumstances using the discovery devices contained in the Federal Rules of Civil Procedure. (*See* Rules 26-34). It is not designed to obtain legal research.

**3. Preliminary Injunction**

On February 18, 2010, Kelley filed a motion seeking an order requiring SCDC to supply him with adequate writing materials to allow him to continue with his litigation. The volume of motions filed by Kelley in this case belies his argument that he is not receiving adequate paper, pens, and envelopes to prosecute his litigation. Granting this motion would require the Court to micro-manage SCDC.

**4. Default**

On February 198, 2010, Kelley filed a request for entry of default judgment. The record shows that the order authorizing service of process in this case required Respondent to file a return on or before February 8, 2010. The record further shows that the return was filed on that date. Therefore, the return was timely. In any event Rule 55, Fed.R.Civ.P., pertaining to default judgment, is not applicable to habeas cases. Allen v. Perini, 424 F.2d 134 (6th Cir. 1970).

**Discussion**

**A. Procedural Bar**

Respondent asserts that all Kelley's grounds for relief are procedurally barred and should not be considered by this Court, except his claim that his trial attorney was ineffective in advising him as to the length of his sentence of incarceration with regard to his guilty plea.

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

**1. Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i) there is either an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. *See* O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. *See* SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue is by filing an application for post-conviction relief ("PCR"). See S.C. Code Ann. § 17-27-10 *et seq*. A PCR applicant is also required to state all of his grounds for relief in his application. *See*, S. C. Code Ann. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims

7

specifically addressed by the PCR court. If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (2007). A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[2] Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. *See* Rose v. Lundy, *supra*.

---

[2]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

### 2. Procedural Bypass[3]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and

---

[3]This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

9

'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, *supra*, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); *see also* Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. *See* Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4. Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the

claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocence.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), *cert. denied*, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), *cert. denied*, 485 U.S. 1000 (1988). Because a petitioner has no constitutional right to counsel in connection with a PCR application and/or an appeal from the denial thereof, he cannot establish cause for procedural default of a claim by showing that PCR counsel was ineffective. Wise v. Williams, 982 F.2d 142, 145 (4th Cir. 1992) *cert. denied*, 508 U.S. 964 (1993). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), *cert. denied*, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocence as to his guilt, *Id.*, or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5. Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and prejudice or actual innocence. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996).

Two of Kelley's grounds (Grounds 1 and 2) for relief cite Article V, § 4 of the South Carolina Constitution. That provision authorizes the Chief Justice of the South Carolina Supreme Court to set terms of court and the Supreme Court to promulgate rules for administration of the courts. Attached to PCR II is a copy of an order of the Supreme Court issued in 1999 which cites Article V, § 4 of the South Carolina Constitution and requires that "all criminal cases in the State of South Carolina shall be disposed of 180 days from the date of the defendant's arrest." However, it is further stated that "[t]his order does not create or define a right of a defendant to a speedy trial." In Ground 2 of the present petition, Kelley assets that his right to due process was denied based on this order. In Ground 1, Kelley asserts that his trial attorney was ineffective for not moving to quash the indictment on this basis. These grounds were raised in PCR II but the South Carolina courts applied a procedural bar to them. In Ground 4 of the present petition, Kelley asserts that the state court lacked subject matter jurisdiction because the "180 days rule" was violated. This claim was not

12

raised in the application in PCR I. (App. 25). Kelley did testify concerning the 180 days rule during the hearing. (PCR Tr., p. 8). It was not addressed by the PCR court in the order of dismissal. Kelley sought to have the issue reviewed by way of his *pro se* Rule 59(e) motions which were rejected. However, the South Carolina Supreme Court rejected the *pro se* attempt because Kelley was represented at the time.

Likewise, Kelley's claim that his Fourth Amendment right was violated because he was arrested in his home without an arrest warrant was rejected by the South Carolina Supreme Court (Ground 3). This ground was also raised in the *pro se* Rule 59(e) motions and rejected by the South Carolina Supreme Court.

The undersigned concludes that the portion of Ground 1 relating to ineffective assistance of counsel relating to the "180 days rule" and Grounds 2-4 were never properly raised in the South Carolina courts. In his "Explanation" responding to Respondent's motion for summary judgment, Kelley appears to assert ineffective assistance of PCR counsel as cause for his default. This argument is without merit.

**B. Ineffective Assistance of Counsel**

As part of his first ground for relief, Kelley asserts that trial counsel was ineffective in advising him of the sentence he would receive. Kelley alleges:

> Counsell(sic) also advised petitioner to plead guilty and told petitioner it was an open plea and that the judge would give petitioner 20 years. However, it was not an open plea.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States

13

Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state

courts properly applied the Strickland test. *See* Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

Ineffective assistance of counsel claims may be asserted in limited circumstances where the petitioner has entered a plea of guilty. A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea. He "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." Tollett v. Henderson, 411 U.S. 258, 267 (1973). When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. Hill v. Lockhart, 474 U.S. 52, 56 (1985).

In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent, i.e., the first prong of the Strickland test. Under this prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. The prejudice prong of the Strickland test is modified and the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

At the PCR hearing Kelley testified that his attorney mislead him (PCR Tr., p. 10), but never specifically testified that counsel told him he would receive a sentence of twenty years. Counsel testified that there was no plea bargain, except that Kelley would plead guilty to voluntary manslaughter and sentencing (up to the maximum of thirty years) was left to the discretion of the court. Counsel testified that Kelley "might probably get 20 years," but he never testified that he

advised Kelley of his prediction. (PCR Tr., pp. 26-27).

The PCR court reviewed the transcript of the plea hearing and found that, based thereon, Kelley's plea was voluntary. The trial court specifically advised Kelley that "if you plead guilty to these charges that the court would sentence you...to a 30-year sentence on both charges combined." Kelley indicated that he understood. (Tr.,pp. 9-10).

The PCR court specifically applied <u>Strickland</u> and <u>Hill</u> to Kelley's claim. The court found Kelley's PCR testimony to be not credible and trial counsel's testimony to be credible. The finding that Kelley failed to show that his plea was involuntary is fully supported by the record.

### Conclusion

Based on a review of the record, it is recommended that:

1. Petitioner's motion for abeyance be **denied**;

2. Petitioner's motion for discovery be **denied**;

3. Petitioner's motion for a preliminary injunction be **denied**;

4. Petitioner's request for entry of default be **denied**; and

5. Respondent's motion for summary judgment be **granted**.

_____
Joseph R. McCrorey
United States Magistrate Judge

April 26, 2010
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

16

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).